## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

JOHN DOE,
by and through his next friends JANE DOE
and RICHARD DOE,

      Plaintiff,

v.                                No.

HOLT PUBLIC SCHOOLS,

      Defendant.

### COMPLAINT AND JURY DEMAND

Plaintiff John Doe, by and through his next friends Jane and Richard Doe, brings this action against Defendant Holt Public Schools ("District") for its violation of his rights under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et seq. ("Title IX"), and his substantive due process rights under the Fourteenth Amendment to the U.S. Constitution, pursuant to 42 U.S.C. § 1983.

### INTRODUCTION

1.      On January 23, 2018, the District announced it had learned that Larry Nassar sexually assaulted three girls on school property, and the school attempted to reassure the public of its purported commitment to preventing child sex abuse and supporting victims.[1]  However, at the same time the District was decrying Nassar's crimes, it was choosing to disregard another predator's reported sexual misconduct against John Doe and other boys at Washington Woods Middle School ("Washington Woods").

---

[1] Justin Hinkley, *Holt Students Asked to Report Nassar Assaults*, LANSING STATE JOURNAL, Jan. 23, 2018, https://www.lansingstatejournal.com/story/news/local/2018/01/23/nassar-victim-says-she-assaulted-holt-school-property/1059609001/.

2.      Fifth-grade teacher Patrick Daley, who like Nassar was ultimately criminally convicted for sexually abusing children, inappropriately touched at least 14 male students, including John Doe, in the fifth and sixth grades at Washington Woods over the course of three years.  As these boys later described to police and testified during Daley's criminal trial, Daley fondled, rubbed, patted, and touched them on their penises, testicles, buttocks, groins, hips, thighs, knees, and/or backs, at times under their shirts or shorts.  Daley perpetrated his misconduct in the school hallways and computer lab, and frequently during class, which the District permitted him to conduct behind a locked door and blocked windows.  Daley had his hands on boys' bodies so often that students came to regard their teacher's sexual misconduct as "normal" or "usual."

3.      Daley preyed on ten-year-old John Doe for nine months, beginning the second week of the 2017-2018 school year.  Daley, in the classroom and computer lab, regularly fondled John's buttocks; touched John under his shirt; rubbed the child's back, arms, and hands; and combed his fingers through John's hair.  John saw Daley similarly touch other male students.

4.      While Daley was molesting John Doe and other boys at Washington Woods, the District received multiple credible reports of Daley's sexually inappropriate behavior – and even learned that Daley had touched intimate areas of John Doe's and another boy's bodies – but it took no meaningful step to stop Daley or protect John and other vulnerable children.

5.      As early as April 2015, Principal Frank Sutterlin had deemed it necessary to prohibit Daley from undressing in the boys' locker room, because he was concerned sexual misconduct complaints could be made about the teacher.  The Principal subsequently saw Daley with his hand resting on or near a boy's buttocks and that Daley, upon realizing the Principal observed this, quickly moved away from the child.  A teacher reported that Daley intentionally

exposed his boxer shorts to students during class. And during the 2016-2017 academic year, **a student complained that Daley had attempted to put his hand under his shirt.** Yet the District did not investigate, discipline, or increase supervision of Daley.

6.       On January 31, 2018, just a week after the District's Nassar announcement, a paraprofessional who worked in Daley's classroom informed Principal Sutterlin that **she witnessed Daley resting his hand on John Doe's buttocks and hip, and then touching a seated boy's hip**. The following week, additional employees came forward and reported spotting Daley, again, in the boys' locker room; finding Daley holding hands with a boy while they were alone in the darkened computer lab; observing Daley with a male middle school student sitting on his lap in the classroom; witnessing Daley engage in "odd" physical closeness with boys; and discovering social media posts broadcasting Daley went to the movies with male students. Teachers relayed a comment made by a female student about Daley – "I heard he likes little boys." It also was commonly known Daley was the **only** teacher at Washington Woods to lock his door when class was in session, and he covered his classroom windows with posters and other materials, all of which was obviously intended to prevent outside detection of his sexual abuse and harassment against students.

7.       At this point, the District admitted that Daley resting his hand on boys' buttocks and hips was "**very dangerous and concerning**," that Daley had "**excessive contact**" with students, and this had the "**potential to bring claims of sexual misconduct**."

8.       Inexplicably, the District still took no measure to determine the extent of Daley's misconduct against John Doe, identify other victims, end Daley's abuse of John Doe and other students, or remediate the harm the teacher had caused John and other victims. The District did not interview or talk to John Doe, let alone any other student, about Daley. The District did not

even contact John Doe's parents, or any other student's parent or guardian, who could have sought immediate counseling or help for their sons. The District did not determine whether other school employees or volunteers had observations or concerns about Daley. The District did not report Daley to law enforcement or the Michigan Department of Health and Human Services' Children's Protective Services ("CPS"), although District administrators and teachers are mandated reporters. Just as before, the District did not formally discipline Daley or increase its supervision of him.

9.     Instead, the District granted Daley tenure, and it allowed him uninterrupted free rein over Washington Woods students. The District did not even prevent Daley from retaliating against the paraprofessional who reported him in late January 2018; Daley kicked her out of his classroom. Daley, predictably, continued sexually violating children.

10.    Daley's abuse ended on May 30, 2018, and only because John Doe and two of his classmates – children left by the District to fend for themselves against a determined predator – mustered the courage to complain to Principal Sutterlin about their teacher. At this late date, after the District had allowed Daley to abuse and harass John Doe and other boys with impunity, the District took its first formal action against the teacher by reporting him to the police.

11.    In October 2019, a jury found Daley guilty of committing criminal sexual conduct against John Doe and six other boys, all when they were students at Washington Woods. Daley was sentenced to serve 7-15 years in prison. Two of the many felony counts for which Daley was criminally convicted resulted from his touching John Doe on the buttocks, the very same misconduct previously reported by the school paraprofessional and ignored by the District.

12.    John Doe, by and through his next friends, seeks recovery for the significant damages he has suffered as a result of the District's actions and inaction, which, among other

things, permitted Daley to sexually abuse and harass him, fostered an unconscionably hostile educational environment, and violated John Doe's Constitutional and federal rights.

## JURISDICTION

13.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this litigation involves matters of federal law, specifically claims made under Title IX and claims for deprivation of civil rights under 42 U.S.C. § 1983 and the U.S. Constitution.

14.     This Court also has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1343(a)(3) & (4) because this litigation involves claims for deprivation of civil rights under 42 U.S.C. § 1983.

15.     Venue in this federal district is proper pursuant to 28 U.S.C. § 1391, as all of the relevant facts giving rise to this case and damages sustained by Plaintiff occurred in this district.

## PARTIES

16.     Plaintiff John Doe was a Washington Woods student.[2]  He is a minor and a resident of Ingham County, Michigan.

17.     Jane Doe is John Doe's mother, and Richard Doe is John Doe's father.  Jane and Richard Doe are John Doe's next friends for purposes of this lawsuit, and they are residents of Ingham County, Michigan.

18.     Defendant District is a recipient of federal funds within the meaning of 20 U.S.C. § 1681(a).  The District geographically lies within Ingham County, Michigan.  Washington Woods is a school that is part of the District.

---

[2] John Doe has filed a Motion to Proceed Under Pseudonym for the purposes of protecting his identity and privacy as a minor and a victim of sexual assault and harassment.

## FACTS

### *Daley Began Working at Washington Woods in Fall 2012*

19.     Daley was a fifth-grade teacher at Cole Academy in Lansing, Michigan for five years.

20.     Daley sexually harassed male students at Cole Academy by, among other things, staring at them while they showered on field trips and inappropriately touching at least one boy.

21.     Daley was let go from Cole Academy.

22.     Defendant District then hired Daley, who began teaching fifth grade at Washington Woods in Fall 2012.

23.     Washington Woods is a public middle school that offers classes for students in the fifth and sixth grades.

24.     Daley was known to keep his classroom door locked while class was in session. At all times relevant to this Complaint, upon information and belief, no other teacher at Washington Woods did this.

25.     Daley also obscured and/or prevented view from the school's hallways into his classroom by covering the room's internal windows with posters and signs.

26.     Throughout his employment at Washington Woods, Daley routinely sexually abused and harassed male students throughout the school building, and often in his classroom.

### *Daley Sexually Harassed and Abused at Least One Male*
### *Student at Washington Woods During the 2015-2016 Academic Year*

27.     During the 2015-2016 school year, Daley sexually abused Student A, a male sixth-grader at Washington Woods.[3]  On multiple occasions in the school hallway, Daley hugged

---

[3] Other minors who were victims of Daley's sexual abuse and harassment are referred to in this Complaint as "Student [ ]," in order to protect their identities and privacy, and in accordance

the boy, wrapped his arm around the child's shoulder, and then slowly lowered his hand to rest

on the student's buttocks.

*Daley Sexually Harassed and Abused Boys at Washington Woods During*
*the 2016-2017 Academic Year, and One Student Reported Daley to the Principal*

28.     During the 2016-2017 academic year, Daley continued sexually abusing and

harassing male students at Washington Woods.

29.     Daley touched Student B's buttocks and penis in the classroom and computer lab.

The boy witnessed Daley inappropriately touch other male students as well.  The child thought

this was "normal" and the way Daley greeted people.

30.     Nearly every other day throughout the school year, Daley touched Student C's

buttocks, upper thigh, groin, hip, underwear area, and back in the school hallways and classroom.

The boy did not understand the touching was wrong and thought it was a sign of "friendship."

31.     Daley frequently touched and rubbed Student D's back and hips.  The boy saw

Daley touch his classmates in the same way and did not think it was "unusual."

32.     Daley attempted to place his hand under Student E's shirt to rub his back in the

classroom.  The boy swatted Daley's hand away.  Daley then retailed against Student E by

writing him up for a disciplinary infraction and sending him to the Principal's office.  **Student E**

**reported Daley's misconduct to the Principal's office**.

*Daley Sexually Harassed and Abused John Doe and Other*
*Male Students at Washington Woods During the 2017-2018 Academic Year*

33.     During the 2017-2018 academic year, Daley continued his abuse and harassment

against boys at Washington Woods, including John Doe.

34.     John Doe was ten-years-old and in the fifth grade at Washington Woods during

---

with Fed. R. Civ. P. 5.2, which requires redaction of a minor's name from court filings.

the 2017-2018 academic year.

35.     Beginning the second week of the academic year, and continuing until May 30, 2018, Daley regularly abused and sexually harassed John Doe at school.

36.     Daley fondled, touched, rubbed, and patted John Doe's buttocks, hips, arms, hands, back, and hair.

37.     Daley touched and rubbed John Doe under his shirt.

38.     Nearly every time that John Doe approached Daley's desk to ask a question, Daley would rub John's back and then move his hands down and rub and pat John's buttocks.

39.     When John was sitting at his own desk, Daley regularly would approach John, comb his fingers through the boy's hair, and rub the child's arms and hands.

40.     John Doe witnessed Daley abuse and harass other male students, including by touching their buttocks, through May 30, 2018.

41.     Other students witnessed Daley abusing John Doe, and many regarded John as one of Daley's "favorites."

42.     John did not like Daley's touching, which made him feel uncomfortable.

43.     At times, when John had a question for Daley and the teacher started touching him, John would walk away without receiving an answer, just to get Daley to stop.

44.     Daley also abused Student F, another student in Daley's fifth-grade class during the 2017-2018 academic year, on a nearly daily basis.  In the classroom, hallway, and computer lab, Daley touched the boy's penis and buttocks, rubbed and touched the student's arms and hair, and put his hand under the child's shirt and shorts.  The child witnessed Daley touch other male students.  The boy did not report Daley because it was "awkward" to tell an adult.

45.     Daley similarly abused Student G, who was also in Daley's fifth-grade class.

Daley frequently touched and rubbed the boy's penis, buttocks, back, and stomach, throughout the school year and often when the child expressed upset or stress.  Daley's abuse made the boy feel uncomfortable and "disgusting."  Student G told his mother that Daley was sexually touching him.  She "did not know what to do."  She considered confronting Daley directly but ultimately did not out of concern that Daley would retaliate against her son, and she did not report Daley to the school.

46.     Daley similarly abused and harassed other male students in his fifth-grade class. Daley touched Student H's buttocks and other boys – Students I, J, and K – on the thigh, knee, and/or back, at times under their clothing.

47.     Daley rubbed the inner thigh and back of Student L who, although not in Daley's class, came to Daley for special instruction.  The child told Daley, "Please don't touch me."

48.     Daley encountered Student M, a sixth-grade student, in the hallway, and Daley touched the child's testicles, buttocks, and back.  The boy did not report Daley because he was nervous about what would happen and was afraid of getting in trouble.

49.     Daley also continued abusing and harassing Student B, who by then was in the sixth grade.  Daley touched the child's penis and buttocks.

50.     Many of these and other students, both male and female, witnessed Daley inappropriately touch boys at school.

51.     At least one male student who observed Daley sexually harass and inappropriately touch multiple boys, including John Doe, later told law enforcement that students did not report Daley because they were afraid that the teacher would revoke their privileges, like recess.

52.     Daley's abuse and harassment continued through May 30, 2018, when John Doe and two other students reported Daley to Principal Sutterlin.

*Pre-January 2018 Reports and Observations of Daley's Inappropriate Conduct*

53.     At the same time Daley was sexually abusing boys at Washington Woods, administrators, teachers, staff, and volunteers knew of, observed, and/or reported Daley's inappropriate conduct with respect to male students.

54.     In Spring 2013 or 2014, not long after Daley began teaching at Washington Woods, a fellow teacher, Keith Allen, reported to Rick Couturier, then the Principal of Washington Woods, that Daley had intentionally exposed his boxer shorts to students during class.

55.     In approximately April 2015, Frank Sutterlin, who replaced Mr. Couturier as the Principal for Washington Woods, discovered Daley changing his clothes in the boys' locker room in the presence of male students.  Principal Sutterlin instructed Daley to change in his classroom, and not in the locker room, to prevent complaints or accusations of sexual misconduct being made against Daley.

56.     In Spring 2015 or Fall 2016, Principal Sutterlin entered the Washington Woods computer lab and observed Daley crouched down behind a student, with his hand resting on the open area of the chair by the student's buttocks.  When Daley realized that Principal Sutterlin was observing him, he quickly stood up and removed his hand from the student.

57.     In 2017, Principal Sutterlin asked Mr. Allen to keep an eye on the boys' locker room.  Mr. Allen discovered that Daley again was in the locker room while students were changing their clothes when Daley had no reason to be there.  Mr. Allen reported this to the District's administration.

58.     Mr. Allen also observed that Daley allowed boys to hang on him and hug him for extended periods of time, and that Daley approached male students and hugged them without

being asked.  Mr. Allen saw that Daley engaged in this behavior only with male students, and not female students.  He regarded Daley's conduct as inappropriate for a teacher.

59.     In 2016 or 2017, a substitute teacher, Cindy Fohey, voiced concern about Daley's physical contact with boys to a teacher, Rob Buckley.  On more than one occasion, she observed the adult male teacher allowing boys to lean against and rest their buttocks on Daley's legs. Daley's physical closeness to male students struck her as "odd."

60.     During the 2016-2017 academic year, a parent volunteer observed Daley acting "flirty" with a male student.

61.     Also during the 2016-2017 academic year, as forth above, Student E reported to the Principal's office that Daley attempted to put his hand under the child's shirt.

62.     In October 2017, Daley invited a few "favorite" male students to his birthday party at the YMCA.  The parent of one student who received the invitation thought this was inappropriate and set off "red flags" for him, but he did not report Daley to the District.  Two male students attended the party, and Daley insisted they change and shower with him in the locker room.

63.     Daley often had male students sit on his lap during class.

64.     Daley touched boys so frequently that students in his classroom, including many of his victims, regarded the abuse as "normal," "usual," or just what Daley did.

65.     Despite all of these reports, observations, and concerns, the District did not discipline Daley, did not investigate further, did not interview students regarding Daley's inappropriate contact, and did not increase its supervision of Daley.

*The District's January 24, 2018 Letter Concerning Larry Nassar*

66.     On January 24, 2018, the District's Superintendent sent a letter to parents, staff,

students, and others in the school community, reporting that the District was made aware "three students, two from Holt and one from a neighboring school district, have reported through victim impact statements in Ingham County Circuit Court that they were abused by Nassar in our athletic building while meeting him there for treatment."

67.     The Superintendent stated, "my heart was heavy upon learning for the first time that criminal acts of a sexual nature reportedly occurred on our property.  I cannot imagine the pain these young women have endured as a result, and being a father myself, I share the outrage our entire community feels."

68.     He wrote, "I write to reassure our parents, guardians, and students that our District has a strong policy prohibiting any sexual misconduct and violence at any time," and continued:

> As educators, we hold ourselves and all of our staff to the highest standards of ethics and propriety, because you entrust your children to us every day.  When these expectations are violated, in an unusual case like this, **we reach out to the victims and investigate so that we eliminate recurrence and support those who have been victimized**.

*Despite Additional Multiple Reports Regarding Daley, the District Refused to*
*Take Any Meaningful Action to Protect John Doe and Other Male Students*

69.     Within a week after the District issued this letter concerning the sexual abuse of children on school grounds, Washington Woods paraprofessional Cynthia Burton, who worked with Daley's students in his classroom, observed Daley touch intimate areas of John Doe's and another boy's bodies.

70.     On January 31, 2018, Ms. Burton reported Daley's inappropriate conduct in an email to Principal Sutterlin, stating:

> I witnessed behavior that made me uncomfortable and I am reporting it.  Mr. Daley had his hand around a boy student an[d] his hand went to his hip then his buttock where it stayed.  This happened in the computer lab at 11:50 and I verbally reported it to Matt and was asked to send email.

Within minutes Mr. Daley spoke to another student who was sitting and his hand went through the chair hole and on the student's lower hip.  I have witnessed a lot of hugging and touching from teacher to male students but today the view was different as I was in the computer lab.

71.     The following week, teachers and staff came forward with multiple reports and complaints to the District's administrators, including Human Resources ("HR") Director Kevin Badge, of Daley's long-running sexual misconduct, much of which the District already knew.

72.     The complaints and reports to District administrators included the following:

a.      In April 2015, Principal Sutterlin discovered Daley changing his clothes in the boys' locker room, in the presence of male students, which Sutterlin thought could result in accusations of sexual misconduct.  Principal Sutterlin directed Daley to not do this.

b.      Mr. Allen, a teacher, observed Daley in the boys' locker room with students, after being told by the Principal not to do so.

c.      A staff member reported observing Daley with a male junior high student sitting on his lap in the classroom.

d.      Substitute teacher Ms. Fohey observed Daley with boys leaning against him and resting their buttocks on his legs.  Daley's physical closeness to the boys struck her as odd.

e.      A few weeks prior, teacher Eileen Gietzen found Daley holding a male student's hand when they were alone in the school's darkened computer lab.

f.      Paraprofessional Ms. Burton – who had reported Daley for inappropriately touching John Doe's buttocks and another boy in the computer lab –  also told the District that Daley touched male students "a lot" in the classroom and hallways, Daley hugged primarily male students, and the adult male teacher initiated hugs with the boys.

      g.     Teacher Kasey Schaub reported observing Daley in the school hallways, giving boys hugs and rubbing their shoulders and backs.  She informed the District that Daley, on social media, had posted a photograph of himself and six or seven male students at a movie theater.

      h.     Two weeks prior, a female student had told teachers Schaub and Allen, regarding Daley, "I heard he likes little boys," and "We know what he is."

      i.     In Spring 2013 or 2014, Daley had shown his underwear to students in his classroom.

73.     After receiving these reports, the District did *not* "reach out to the victims and investigate," in order to "eliminate recurrence" of child sex abuse or to "support those who have been victimized," despite publicly describing this as an imperative in connection with its report regarding Nassar.

74.     The District did not interview or "reach out" to John Doe or any other student witness or victim, including the other boy who Daley had been seen inappropriately touching in the computer lab.

75.     The District did not inform John Doe's parents that Daley has been observed with his hand resting on their son's buttocks or hip, or any other information concerning Daley's misconduct against John and his classmates.

76.     The District did not inform any student's parents or guardians of the reports or Daley's misconduct.

77.     The District did not reach out to any other teachers, staff, or volunteers to ascertain whether they had observed Daley engage in conduct that caused them concern.

78.     Based upon information and belief, the District's Title IX Coordinator, Renee Sadler, did not oversee the District's response – or lack thereof – to these reports or have any material involvement in the matter.

79.     On or about February 8, 2018, HR Director Badge had a "coaching conversation" with Daley, during which Badge acknowledged, on behalf of the District, that Daley had been "**observed working very closely with students, and having hands in areas that are very dangerous and concerning, hand resting on a student's butt or hip**."  The District described Daley as having "**excessive contact**" with students.  The District admitted, "**this has the potential to bring claims of sexual misconduct**."

80.     However, the District did not formally discipline Daley.

81.     Although the District's administrators and teachers are mandated reporters pursuant to MCL 722.621 et. seq., Daley was not reported to CPS.

82.     The District did not report Daley's misconduct to law enforcement.

83.     The District did not increase its already largely nonexistent supervision of Daley after January 31, 2018.

84.     The District did not require Daley to keep his door unlocked or open, or to uncover the windows to his classroom.

85.     The District did not provide counseling for any of the students Daley touched, abused, or harassed, nor did it make any other attempt to remedy the sexual harassment and abuse the teacher had inflicted upon John Doe and other students.

*Daley Continued Sexually Abusing and Harassing John Doe and Other Male Students*

86.     Daley retaliated against paraprofessional Ms. Burton, who had reported him to administrators, by kicking her out of his classroom and eliminating her ability to observe – and

report – any of his continued sexual misconduct against students.

87.    Daley, unsupervised and likely emboldened by the District's demonstrated inaction, continued sexually abusing male students at Washington Woods, including John Doe.

88.    Daley regularly sexually abused and harassed John Doe and other male students through May 30, 2018, the day that John and two other boys, during a discussion with Principal Sutterlin on another matter, disclosed Daley's sexual misconduct.  John Doe reported that the teacher had touched him that same day.

*A Jury Found Daley Guilty of Committing Criminal Sexual*
*Misconduct Against John Doe and Other Boys at Washington Woods*

89.    On May 31, 2018, the District reported Daley to law enforcement.

90.    The Ingham County Sheriff's Office investigated Daley.  In April 2019, Daley was arrested.

91.    In October 2019, a jury found Daley guilty of committing 18 counts of second-degree criminal sexual conduct against John Doe and six other boys at Washington Woods. Two of these counts were for Daley touching John Doe on the buttocks.

92.    On November 20, 2019, Daley was sentenced to serve 7-15 years in prison.

93.    Because of the District's action and inaction, John Doe suffered Daley's sexual abuse and harassment, he witnessed the sexual abuse and harassment of other boys, and his educational environment was rendered unconscionably hostile.  John Doe has suffered, among other things, trauma, anxiety, fright, stress, and lost educational benefits and opportunities.

*Defendant Failed to Provide Essential Training and*
*Education on Sexual Abuse of Students by School Employees*

94.    Over two decades ago, the U.S. Supreme Court determined that schools may be held liable in private Title IX actions for monetary damages when they are deliberately

indifferent to teacher-against-student sexual misconduct and harassment, and stated:

> The number of reported cases involving sexual harassment of students in schools confirms that harassment unfortunately is an all too common aspect of the educational experience. **No one questions that a student suffers extraordinary harm when subjected to sexual harassment and abuse by a teacher, and that the teacher's conduct is reprehensible and undermines the basic purposes of the educational system**.[4]

95.    Nearly a quarter of a century ago, the Sixth Circuit notified all public schools, including Defendant District, that teacher-against-student sexual abuse violates the student's Fourteenth Amendment Due Process rights, holding:

> Upon consideration, **we hold that a schoolchild's right to personal security and to bodily integrity manifestly embraces the right to be free from sexual abuse at the hands of a public school employee**. The substantive component of the Due Process Clause protects students against abusive governmental power as exercised by a school. To be sure, the magnitude of the liberty deprivation that sexual abuse inflicts upon the victim is an abuse of governmental power of the most fundamental sort; it is an unjustified intrusion that **strips the very essence of personhood. If the "right to bodily integrity" means anything, it certainly encompasses the right not to be sexually assaulted under color of law**. This conduct is so contrary to fundamental notions of liberty and so lacking of any redeeming social value, that no rational individual could believe that sexual abuse by a state actor is constitutionally permissible under the Due Process Clause.[5]

96.    In January 2001, the U.S. Department of Education Office for Civil Rights ("OCR") issued *Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties* ("2001 Guidance"), informing all U.S. schools receiving Federal financial assistance, including Defendant District, that "[p]reventing and remedying sexual harassment in schools is **essential** to ensuring a safe environment in which students can learn." OCR stated:

> Sexual harassment is unwelcome conduct of a sexual nature. Sexual harassment can include unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature. Sexual harassment of a

---

[4] *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292 (1998) (emphasis added).
[5] *Doe v. Claiborne Cnty.*, 103 F.3d 495, 506-07 (6th Cir. 1996) (emphasis added).

student can deny or limit, on the basis of sex, the student's ability to participate in or to receive benefits, services, or opportunities in the school's program. Sexual harassment of students is, therefore, a form of sex discrimination prohibited by Title IX[.]

97.    OCR's 2001 Guidance notified schools that a hostile educational environment can be created when students **witness** sexual harassment, stating:

A hostile environment can occur even if the harassment is not targeted specifically as the individual complainant.   For example, if a student, group of students, or a teacher regularly directs sexual comments toward a particular student, a hostile environment may be created not only for the targeted student, but also for others who **witness** the conduct.

98.    OCR's 2001 Guidance informed schools that, when a teacher is the harasser, students may not take action or even object, as students "may be encouraged to believe that a teacher has absolute authority over the operation of his or her classroom," and "may believe that any objections would be ineffective in stopping the harassment or may fear that by making objections he or she will be singled out for harassing comments or other retaliation."

99.    The 2001 Guidance also reminded schools they are responsible for taking prompt and effective action to stop and prevent the recurrence of a school employee's sexual harassment of a student.  OCR stressed the importance of proper training for those in authority, stating:

**[S]chools need to ensure that employees are trained so that those with authority to address harassment know how to respond appropriately**, and other responsible employees know that they are obligated to report harassment to appropriate school officials.  Training for employees should include practical information about how to identify harassment and, as applicable, the person to whom it should be reported.

100.    In 2004, the U.S. Department of Education issued *Educator Sexual Misconduct: A Synthesis of Existing Literature*, a study that determined nearly 10% of children in U.S. public schools are subjected to sexual misconduct by a school employee.

101.    In January 2006, OCR issued *Dear Colleague Letter – Sexual Harassment Issues*, to U.S. public schools, including Defendant District, stating, "[u]nfortunately, a significant number of students are still subjected to sexual harassment, which can interfere with a student's education as well as his or her emotional and physical well-being." OCR again reminded schools of their obligations "**to take immediate and effective steps to end sexual harassment when it occurs, prevent its recurrence, and remedy its effects**."

102.    On April 4, 2011, OCR sent *Dear Colleague Letter: Sexual Violence*, to all U.S. public schools, including the Defendant, that issued a "call to action" to the nation's schools because of "deeply troubling" data regarding school-place sexual violence. OCR stated, "Schools should not wait for the conclusion of a criminal investigation or criminal proceeding to begin their own Title IX investigation and, if needed, **must take immediate steps to protect the student in the educational setting**."

103.    On April 24, 2015, OCR issued *Dear Colleague Letter: Title IX Coordinators*, and *Title IX Resource Guide*, to all U.S. public schools, including Defendant District. OCR reminded schools of their obligation to designate at least one employee as a Title IX Coordinator who is responsible for coordinating the school's efforts to comply with and carry out the school's Title IX responsibilities, pursuant to 34 C.F.R. § 106.8(a). OCR stated, "In our enforcement work, OCR has found that some of the most egregious and harmful Title IX violations occur when a recipient fails to designate a Title IX coordinator or when a Title IX coordinator has not been sufficiently trained or given the appropriate level of authority to oversee the recipient's compliance with Title IX."

104.    The Michigan Department of Education issued *The Role of the Title IX Coordinator in Human Resources Activities*, to all Michigan schools, including Defendant

District, stating, "[a]lthough an educational agency's Human Resources personnel must take care to implement only policies and procedures that conform to Title IX requirements, **the officially appointed Title IX coordinator has a responsibility to monitor agency human resources activities to assure compliance with the federal law**."

105.    Upon information and belief, despite clear notice by the U.S. Supreme Court, Sixth Circuit, and U.S. Department of Education regarding the prevalence of school employee-against-student sexual harassment, the severe harm caused by such harassment, and the District's obligations to prevent and remediate the effects of this harassment, at all times relevant hereto the District failed to provide adequate training or education to administrators, teachers, staff, students, and parents regarding Title IX and school employee sexual abuse of children.

106.    Upon information and belief, at all times relevant hereto, the District failed to provide training or education to administrators, teachers, staff, students, and parents on protecting students from sexual abuse, identifying child sexual harassment and abuse, recognizing grooming behaviors of sexual predators, interviewing victims and potential witnesses of abuse, investigating reports of child sexual abuse, remediating sexual harassment and abuse, and proper reporting of suspected sexual abuse to CPS and law enforcement.

107.    Upon information and belief, at all times relevant hereto, Defendant failed to provide training or education to administrators, teachers, staff, students, and parents on any then-existing written District policy or protocol regarding school employee-against-student sexual harassment and/or Title IX.

108.    Upon information and belief, at all times relevant hereto, Defendant failed to designate a Title IX Coordinator who was properly trained and/or who was provided the appropriate level of authority to ensure that the District complied with its obligations after

receiving notification and reports regarding the substantial likelihood that Daley would sexually harass male students, and even after receiving notifications and reports that he was, in fact, sexually abusing and harassing boys at Washington Woods, including John Doe.

109.    Defendant's lack of training is evidenced by, among other things, failing to conduct a Title IX investigation of Daley's reported sexual misconduct against children at Washington Woods, not even after receiving multiple credible reports in early 2018; not interviewing a single student about Daley, until John Doe and his classmates came forward on May 30, 2018; not taking any immediate steps to deter or prevent Daley from abusing and harassing students, such as by increasing monitoring of Daley or, at the very least, requiring he keep his classroom door open and windows unblocked; not reporting Daley to CPS or law enforcement prior to May 31, 2018; not informing or involving the District's Title IX Coordinator immediately upon learning of Daley's inappropriate conduct; and not informing parents or guardians that Daley reportedly inappropriately touched their sons.

## CLAIMS FOR RELIEF

### COUNT I
### Violation of Title IX, 20 U.S.C. § 1681, *et seq.*

110.    Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully stated herein.

111.    John Doe suffered Daley's sexual touching, abuse, and harassment, which is considered sex discrimination prohibited by Title IX.

112.    John Doe witnessed Daley similarly sexually touch, abuse, and harass other male students, which also is considered sex discrimination prohibited by Title IX.

113.    Principal Sutterlin and HR Director Badge were "appropriate persons" within the meaning of Title IX, in that they had the authority, including supervisory authority, to take

corrective action and end Daley's sexual touching, abuse, harassment, and discrimination against John Doe and other male students.

114.    Defendant District had actual knowledge that Daley posed a substantial risk of sexually harassing male students, including John Doe, based on, among other things, the report to the former Washington Woods Principal that Daley showed his underwear to male students; Principal Sutterlin's observation in April 2015 of Daley undressing in the presence of male students in the locker room, which the Principal believed could constitute sexually inappropriate behavior; Principal Sutterlin subsequently viewing Daley with his hand resting on or in the area of a boy's buttocks; and the report made by Student E during the 2016-2017 academic year that Daley had tried to put his hand under the boy's shirt.

115.    Despite possessing this actual knowledge, Defendant District failed to investigate or take any meaningful supervisory, disciplinary, or corrective action against Daley to prevent him from perpetrating sexual misconduct and harassment against John Doe.

116.    Defendant District had actual knowledge that Daley sexually abused and harassed John Doe, specifically, when paraprofessional Ms. Burton informed Principal Sutterlin that Daley had rested his hand on John's buttocks and hip.  Based on this report, and the additional reports made to Principal Sutterlin and HR Director Badge during the following week, the District had actual notice that Daley had sexually abused and harassed John Doe.

117.    Defendant had actual knowledge of the hostile educational environment John Doe suffered due to Daley's sexual discrimination, harassment, and abuse against him as well as that of other boys, which John Doe witnessed.

118.    Despite possessing this actual knowledge, Defendant District failed to investigate, take any meaningful disciplinary or corrective action against Daley to prevent his continued

sexual misconduct against John Doe and other students, or take any action that might remediate the sexual harassment and hostile education environment John suffered.  Defendant's action and inaction were clearly unreasonable given the totality of the circumstances and constituted deliberate indifference.

119.    Through its actions and inaction, Defendant created a climate in which Daley's sexual harassment was tolerated, thus fostering Daley's continued sexual harassment and abuse against John Doe and other boys at Washington Woods, which proximately caused severe injuries to John Doe.

120.    As a result of Defendant's deliberate indifference, John Doe was subjected to initial and additional sexual harassment by Daley throughout the 2017-2018 academic year.

121.    The sexual harassment, assault, abuse, and harassment Daley inflicted on John Doe was severe, pervasive, and objectively offensive, and effectively barred his access to educational opportunities and benefits.

122.    By its actions and inaction, Defendant acted with deliberate indifference toward the rights of John Doe to an educational environment free of teacher sexual harassment, thus materially impairing his ability to pursue his education in violation of Title IX.

123.    Specifically, Defendant violated Title IX by, *inter alia*:

   a.    Ignoring complaints and reports regarding Daley's substantial risk of sexually abusing male students, including John Doe, or being deliberately indifferent thereto;

   b.    Ignoring the report that Daley had inappropriately touched John Doe and another boy in the computer lab, or being deliberately indifferent thereto;

   c.    Failing to investigate the many reports of Daley's sexual misconduct, or being deliberately indifferent thereto;

   d.    Requiring John Doe to protect himself from sexual harassment and abuse perpetrated by Daley;

e.   Creating a climate that tolerated sexual harassment against John Doe, or being deliberately indifferent thereto;

f.   Failing to discipline Daley for his sexual misconduct against male students, including John Doe, or being deliberately indifferent thereto;

g.   Failing to increase supervision or monitoring of Daley after his sexual misconduct was reported, including that against John Doe, or being deliberately indifferent thereto;

h.   Failing to report Daley to CPS or law enforcement, despite the fact that District administrators and teachers are mandated reporters;

i.   Failing to provide, offer, recommend, or coordinate adequate health, psychological, counseling, and academic assistance and services to John Doe after he was sexually harassed, assaulted, and violated by Daley, or being deliberately indifferent thereto; and

j.   Through other actions, inaction, and deliberate indifference.

124.   As a direct and proximate result of Defendant's action, inaction, and deliberate indifference, John Doe sustained and continues to sustain injuries for which he is entitled to be compensated, including but not limited to:

a.   Past, present, and future physical and psychological pain, suffering and impairment;

b.   Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

c.   Impaired educational capacity;

d.   Attorneys' fees and costs; and

e.   Such other and further relief as this Court deems just and proper.

### COUNT II
### Violation of Plaintiff's Constitutional Rights, pursuant to 42 U.S.C. § 1983
### *Failure to Train*

125.   Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully stated herein.

126.    Children like John Doe have a well-established right to be free from teacher sexual abuse, which violates a child's right to personal security and bodily integrity guaranteed by the Fourteenth Amendment to the U.S. Constitution.

127.    The U.S. Supreme Court holds, "we conclude that Title IX was not meant to be an exclusive mechanism for addressing gender discrimination in schools," and that a plaintiff may bring causes of action under both Title IX and 42 U.S.C. § 1983 for unlawful sex discrimination.[6]

128.    At all times relevant hereto, Defendant District was a policymaker having a duty to train, and failed to properly or sufficiently train, administrators, teachers, staff, volunteers, students, and parents concerning school employee sexual misconduct against students and identifying, investigating, reporting, and stopping inappropriate conduct by teachers like Daley against District students like John Doe.

129.    At all times relevant hereto, Defendant District was a policymaker having a duty to train, and failed to properly or sufficiently train, administrators, teachers, staff, volunteers, students, and parents regarding any written policies that would prevent or prohibit actions like those taken by Daley against John Doe.

130.    Defendant District failed to provide such training to administrators, teachers, staff, students, and parents despite the *obvious* need for training.

131.    Numerous authorities, including the U.S. Supreme Court, Sixth Circuit, and U.S. Department of Education, made clear and gave notice to Defendant District that school employees will confront student sexual harassment and abuse with regularity, given the high

---

[6] *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 255-58 (2009).

predictability, recurrence, prevalence, and injurious nature of school employee-against-student sexual assault, abuse, and harassment in schools.

132.    Defendant District failed to adequately train its administrators, teachers, staff, students, and parents, and thereby prohibit or discourage foreseen sexual misconduct, despite the clearly established and well-known dangers of sexual abuse, harassment, assault, and battery faced by students in U.S. public schools, and thereby was deliberately indifferent.

133.    Defendant District failed to provide such training in light of foreseeable consequences that could result from a lack of instruction, including, but not limited to, teacher sexual harassment against students like John Doe.

134.    Defendant District's failure to train its administrators, teachers, staff, students, and parents effectively denied John Doe's established Constitutional rights.

135.    Defendant District's failure to train administrators, staff, students, and parents was deliberate, reckless, and in callous indifference to John Doe's established Constitutional rights.

136.    As a direct and proximate result of Defendant District's actions, inaction, and deliberate indifference to and violation of John Doe's established Constitutional rights, John Doe suffered, and continues to suffer, injuries including, without limitation, emotional distress, psychological trauma, and mortification.

137.    As a direct and proximate result of Defendant District's actions, inaction, deliberate indifference to, and violation of John Doe's established Constitutional rights, John Doe suffered, and continues to suffer, injuries for which he is entitled to be compensated, including but not limited to:

       a.    Past, present, and future physical and psychological pain, suffering and impairment;

  b.  Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

  c.  Impaired educational capacity;

  d.  Attorneys' fees and costs; and

  e.  Such other and further relief as this Court deems just and proper.

**COUNT III**
**Violation of Plaintiff's Constitutional Rights, pursuant to 42 U.S.C. § 1983**
***Conscience-Shocking and Arbitrary Executive Action***

138. Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully stated herein.

139. John Doe's right to bodily integrity is an established and deeply-rooted fundamental right and liberty guaranteed by the substantive due process clause of the Fourteenth Amendment to the U.S. Constitution.

140. A teacher's sexual abuse of a student, like John Doe, "is an abuse of governmental power of the most fundamental sort; it is an unjustified intrusion that strips the very essence of personhood."[7]

141. Defendant District violated John Doe's fundamental rights and liberties by taking discretionary, conscience-shocking, arbitrary executive action, without John Doe's consent, that directly interfered with John's fundamental right to bodily integrity.

142. Defendant District's discretionary, conscience-shocking, and arbitrary executive actions included, *inter alia*, its post-January 31, 2018 decision to only have a "conversation" with Daley – who had reportedly touched John Doe and another child on intimate parts of their bodies, conduct which was criminal in nature – but not supervise or monitor Daley's conduct at school with male students; not require that he keep his door unlocked or open, or windows

---

[7] *Claiborne Cnty.*, 103 F.3d at 506-07.

unblocked, to increase visibility into his classroom; not interview any students; not reach out to John Doe or any other victim; not inform any parents or guardians; not discipline or materially reprimand Daley; and not report to law enforcement or CPS, all which left ten-year-old John Doe vulnerable to, and the subject of, Daley's continued sexual abuse and harassment at school, often behind the classroom's locked door.

143.    Defendant District's action was conscience-shocking in that it permitted Daley's reported sexual abuse against John Doe and other students to continue.

144.    Defendant District's action infringed upon the decencies of civilized conduct, was offensive to human dignity, and interfered with rights implicated in the concept of ordered liberty.

145.    Defendant District had time to fully consider the potential consequences of its conduct, and to make an unhurried judgment concerning Daley's misconduct and the type of harm that would result from permitting Daley to continue teaching John Doe and other students, without supervision, monitoring, sanction, restriction, or report to CPS or law enforcement – namely continued child sex abuse and the devastating harm sexual abuse causes victims.

146.    Defendant knew of facts from which it could infer that Daley posed a substantial risk of serious harm to John Doe and other students; it did infer that risk, as evidenced by the District's own description of Daley's contact with male students as "dangerous and concerning," with "the potential to bring claims of sexual misconduct;" and it acted with indifference toward John Doe's fundamental rights and liberties.

147.    Defendant District knew, even before January 31, 2018, that Daley engaged in behavior from which the District could infer that Daley posed a substantial risk of sexually

abusing male students, including but not limited to Daley's undressing in the boys' locker room, which Principal Sutterlin understood could result in claims of sexual misconduct.

148.    After January 31, 2018, the District again specifically acknowledged that Daley's touching of John Doe and another boy, along with other reports of his excessive contact with male students, created a substantial risk that Daley would be accused of sexual misconduct.

149.    Defendant District acted with deliberate indifference and callous disregard to the substantial risk of serious harm that Daley posed to John Doe and other male students.

150.    As a direct and proximate result of Defendant's actions, inaction, deliberate indifference to, and violation of John Doe's established Constitutional rights, John Doe suffered and continues to suffer injuries for which he is entitled to be compensated, including but not limited to:

    a.    Past, present, and future physical and psychological pain, suffering and impairment;

    b.    Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

    c.    Impaired educational capacity;

    d.    Attorneys' fees and costs; and

    e.    Such other and further relief as this Court deems just and proper.

## PRAYER FOR RELIEF

Plaintiff prays the Court for judgment in favor of Plaintiff and against Defendant, awarding Plaintiff his compensatory damages in an amount to be established at trial, equitable relief, reasonable attorneys' fees and costs, legal interest, and such other relief as the Court may deem just and proper under the circumstances.

## **JURY DEMAND**

Plaintiff respectfully demands a trial by a jury.


Date:   April 20, 2020                    By: s/ Monica H. Beck
                                          Monica H. Beck (P78555)
                                          THE FIERBERG NATIONAL LAW
                                          GROUP, PLLC
                                          161 East Front Street, Suite 200
                                          Traverse City, MI 49684
                                          Tel (231) 933-0180
                                          Fax (231) 252-8100
                                          mbeck@tfnlgroup.com